IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY MICHAEL COLUMBARE, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:21-CV-297-B-BK |
| | § | |
| SOUTHWEST AIRLINES, CO., | § | |
| DEFENDANT. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3,* this cause is before the Court for the issuance of findings and a recommended disposition on D*efendant Southwest Airlines Co.'s Motion to Dismiss Plaintiff's Amended Complaint.* Doc. 30. For the reasons that follow, the motion should be **GRANTED**.

## I. PROCEDURAL HISTORY

Plaintiff filed this *pro se* action in February 2021, alleging that on March 19, 2017, he was wrongfully removed from a Southwest Airlines flight and charged with various crimes of which he was ultimately acquitted. Doc. 3 *passim.* Plaintiff's original complaint and a second "civil rights" complaint he appended to it totaled more than 240 single-spaced pages. Doc. 3; Doc. 3-2 at 45-90. Additionally, Plaintiff attached 66 exhibits to his complaint, which exceeded 800 pages. Doc. 3-3, *et seq.* On Defendant's motion, the undersigned recommended that Plaintiff's complaint be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure based on Plaintiff's failure to comply with Rule 8(a)'s "short and plain statement" stricture. Doc. 23. The district judge accepted the recommendation and granted Plaintiff leave to file an amended complaint. Doc. 26; Doc. 29.

Plaintiff then filed the operative *Amended Complaint*.  Doc. 28.  In it, he alleges that while he was a passenger on a flight from St. Louis, Missouri to Seattle, Washington, one of Defendant's flight attendants, Todd Skiba ("Skiba"), falsely informed the pilot that Plaintiff was using profanity towards the flight crew and fellow passengers, "appeared intoxicated, was kicking seats on the aircraft, and made verbal and physical threats and assaults."  Doc. 28 at 5-6. The flight was diverted to Omaha, Nebraska, based on Skiba's claims, and, upon landing, local police boarded the aircraft and searched, handcuffed, and removed Plaintiff.  Doc. 28 at 6.  The United States Attorney's Office for the District of Nebraska subsequently indicted Plaintiff for interference with a flight crew in violation of 49 U.S.C. § 46504.  Doc. 28 at 8.

Plaintiff contends that during his criminal trial, a recording of the incident made by his seatmate proved he did not use the threatening and profanity-laced language Skiba claimed he had.  Doc. 28 at 11-12.  He was acquitted on December 11, 2019.  Doc. 28 at 12.  Plaintiff now brings causes of action for (1) "malice/negligence per se," Doc. 28 at 12-15; (2) defamation per se, Doc. 28 at 15-19; (3) intentional infliction of emotional distress ("IIED"), Doc 28 at 19-22; and (4) violation of his First Amendment rights pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.[1] Doc. 28 at 22-23.  Defendant again moves to dismiss pursuant to Rule 12(b)(6).  Doc. 30.

## II.  APPLICABLE LAW

A plaintiff fails to state a claim under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  In order to overcome a Rule 12(b)(6) motion, a plaintiff's complaint

---

[1] While Plaintiff also alleged a violation of the criminal conspiracy statute, 18 U.S.C. § 241, he did not defend this claim in response to Defendant's motion.  As a result, he has abandoned it. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that if a plaintiff fails to respond to an argument raised in a motion to dismiss, it is deemed to be abandoned).

should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). A court ruling on a Rule 12(b)(6) motion may rely on the complaint, documents properly attached to the complaint or incorporated into the complaint by reference, and matters of which judicial notice can be taken. *Randall D. Wolcott, M.D., P.A.*, 635 F.3d 757, 763 (5th Cir. 2011).

## III. ANALYSIS

### A. *Immunity*

As an initial matter, Defendant argues it is statutorily immune from liability with respect to all of Plaintiff's claims, citing the Aviation and Transportation Security Act ("ATSA"). Doc. 31 at 14-15. Defendant notes the only exception to immunity is if an airline's disclosure to law enforcement authorities was made with actual knowledge that the disclosure was materially false, which Plaintiff does not allege in his operative complaint. Doc. 31 at 15 (citing *Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 246-47 (2014)).

Plaintiff counters that Skiba knowingly made materially false statements and omitted and concealed information, which is evidenced by the trial testimony of another flight attendant and a passenger on the flight, a recording of part of the incident played in court, and the resulting acquittal on the criminal charge against him. Doc. 32 at 9-14.

The ATSA provides, in relevant part:

> Any air carrier or foreign air carrier or any employee of an air carrier or foreign air carrier who makes a voluntary disclosure of any suspicious transaction relevant to a possible violation of law or regulation, relating to air piracy, a threat to aircraft or passenger safety, or terrorism . . . to any employee or agent of the Department of Transportation, the Department of Homeland Security, the Department of Justice, any Federal, State, or local law enforcement officer, or

any airport or airline security officer shall not be civilly liable to any person under any law or regulation of the United States, any constitution, law, or regulation of any State or political subdivision of any State, for such disclosure.

49 U.S.C. § 44941(a).  But this immunity does not attach to "any disclosure made with actual knowledge that the disclosure was false, inaccurate, or misleading" or "any disclosure made with reckless disregard as to the truth or falsity of that disclosure."  49 U.S.C. § 44941(b).  While few courts have had cause to address these provisions, the Supreme Court did so in *Air Wisconsin Airlines.*

In that case, a Wisconsin Air pilot who had failed his final opportunity to obtain certification to fly a particular aircraft took off his headset, tossed it at the simulator screen, and loudly told the training instructor, "This is a bunch of shit. I'm sorry. You are railroading the situation[,] and it's not realistic." *Air Wisconsin Airlines*, 571 U.S. at 242.  The airline's vice president of operations, David LaWare, "regarded Hoeper's behavior in the simulator as 'a fairly significant outburst,' of a sort that he 'hadn't seen . . . before" and "knew it was a given that . . . Hoeper's employment was . . . going to be terminated as a result of his failure to complete the simulator training." *Id.* (cleaned up).  Another director then mentioned that Hoeper was a Federal Flight Deck Officer ("FFDO"), meaning he was deputized to defend aircraft flight decks and thereby permitted "to carry a firearm while engaged in providing air transportation." *Id.* at 243 (quoting 49 U.S.C. § 44921(f)(1)).  While Hoeper had not been authorized to carry the firearm during his trip to the training facility because he was not "providing air transportation," the airport's security procedures made it possible for crew members to bypass screening, so Hoeper could have carried his gun in spite of the rule. *Id.*

In light of the situation, and in consideration of two other instances in which disgruntled airline employees had attacked fellow employees on an aircraft, LaWare concluded that the

Transportation Safety Administration ("TSA") should be notified of the event. *Id.* at 243-44. Air Wisconsin's fleet manager then informed the TSA: (1) that Hoeper "was an FFDO who may be armed" and that the airline was "concerned about his mental stability and the whereabouts of his firearm"; and (2) an "[u]nstable pilot in [the] FFDO program was terminated today." *Id.* at 244. As a result, he was removed from the plane, searched, and questioned about the gun which, as it turned out, he had left at home. *Id.*

Hoeper subsequently sued Air Wisconsin for, *inter alia*, defamation. *Id.* Air Wisconsin was denied summary judgment based on ATSA immunity, and the case proceeded to trial where a jury found in Hoeper's favor. *Id.* at 245. The state appellate courts affirmed, and the dispute ultimately went before the United States Supreme Court, which granted certiorari to decide "[w]hether ATSA immunity may be denied without a determination that the air carrier's disclosure was materially false." *Id.* at 246. The Supreme Court observed that "Congress patterned the exception to ATSA immunity after the actual malice standard of *New York Times Co. v. Sullivan*," which requires "material falsity." *Id.* In view of that standard, the Court held that "ATSA immunity may not be denied under § 44941(b) to materially true statements" and reversed the lower court's decision. *Id.* at 249.

Preliminarily, to the extent Defendant argues Plaintiff's failure to allege "material falsity" in the operative complaint requires dismissal based on ATSA immunity, Plaintiff is not required to anticipate this defense and structure his complaint accordingly. *See* N*obre v. La. Dep't of Pub. Safety,* 935 F.3d 437, 442 (5th Cir. 2019) ("A plaintiff is not required to anticipate or overcome affirmative defenses, such as expiration of the statute of limitations, in the complaint."). Regardless, Plaintiff does allege in the operative complaint that Skiba knowingly made materially false accusations and that Defendant was aware of the statements and itself provided

"false statements and fabricated claims" during the criminal investigation. S*ee* Doc. 28 at 12-13, 15-16, 18, 23. Even assuming Plaintiff was required to preemptively plead that immunity does not apply, this is sufficient to allege material falsity.

In any event, while cases addressing ATSA immunity are scant, virtually all courts have resolved the issue on summary judgment. *See Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 271 (2d Cir. 2015) (resolving ATSA immunity question on summary judgment for plaintiff's claims of IIED, negligence, and defamation which had survived an earlier motion to dismiss); *Makhzoomi v. S.W. Airlines Co.*, 419 F. Supp. 3d 1136, 1158 (N.D. Cal. 2019) (denying summary judgment on ATSA immunity); *Bandary v. Delta Air Lines, Inc.*, No. EDCV 17-1065 DSF (ASX), 2019 WL 9244788, at *3 (C.D. Cal. Oct. 11, 2019) (noting summary judgment in airline's favor based on ATSA), *clarified on other grounds*, 2021 WL 7285990 (C.D. Cal. Oct. 8, 2021); *cf. Ilczyszyn v. S.W. Airlines Co*., 295 Cal. Rptr. 3d 533, 536-37 (Cal. Ct. App. 2022) (affirming the district court's grant of the airline's motion in limine based on ATSA immunity), *rev. denied*, Oct. 12, 2022; *see also DelVecchia v. Frontier Airlines, Inc*., No. 2:19-CV-1322-KJD-DJA, 2021 WL 1214778 (D. Nev. Mar. 30, 2021) (denying a motion to dismiss based on ATSA immunity); *Kreith v. Am. Airlines, Inc.*, No. 20 C 1593, 2021 WL 780716, at *4 (N.D. Ill. Mar. 1, 2021) (denying a motion to dismiss defamation claim based on ATSA immunity); *Hansen v. Delta Airlines*, No. 02 C 7651, 2004 WL 524686, at *8 (N.D. Ill. Mar. 17, 2004) (same). Accordingly, Defendant is not entitled to dismissal of Plaintiff's complaint based on its defense of ATSA immunity at this stage of the case.

**B.   *Choice of Law***

Turning to the merits of Plaintiff's tort claims, Defendant asserts that relevant choice of law principles support the application of either Missouri or Nebraska law, as Plaintiff's flight

originated in Missouri, and he was arrested and prosecuted in Nebraska.  Doc. 31 at 18.  While Plaintiff's response is largely based on a personal jurisdiction argument not applicable here, he argues Texas law should apply.  Doc. 32 at 15-16.

A federal court exercising diversity and/or supplemental jurisdiction "is required to follow the choice of law rules of the state in which it sits."  *Resolution Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992) (diversity jurisdiction) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Accordingly, Texas choice of law rules apply.  As the party advocating for the application of a foreign state's laws, Defendant bears the burden of establishing that those laws differ from those of Texas.  *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 53 & n.5 (Tex. 2008); *see also Janvey v. Alguire*, 846 F. Supp. 2d 662, 671 (N.D. Tex. 2011) ("[T]he party urging application of another state's substantive law [must] 'furnish the Court with sufficient information to establish that the law of another state' applies) (quoting *Holden v. Capri Lighting, Inc.*, 960 S.W.2d 831, 833 (Tex. App.—Amarillo 1997, no pet.)) (cleaned up).

Defendant did not address Texas law in its choice of law analysis, arguing only the distinctions between Nebraska and Missouri law.  *See* Doc. 31 at 18-23.  Accordingly, the Court ordered Defendant to file a supplemental brief on this question and permitted Plaintiff to also brief the issue.  Doc. 36.  Plaintiff continues to advocate for the application of Texas law.  Doc. 39 at 10-11.  Defendant maintains that Texas choice of law rules dictate the application of Nebraska law.  Doc. 37 at 12-16.  Defendant also has submitted an excerpt of its passenger Contract of Carriage (the "Contract"), which contains a choice of law clause.  In pertinent part, the provision states:

> Any and all matters arising out of or relating to this Contract of Carriage and/or the subject matter hereof shall be governed by, construed, and enforced in accordance

with the laws of the United States of America and, to the extent not preempted by Federal law, the laws of the State of Texas *without regard to conflict of law principles, regardless of the legal theory upon which such matter is asserted.*

Doc. 38 at 7 (emphasis added).

### 1. Judicial Notice

The Court must first address whether it can consider the Contract's provision given the procedural posture of this case. In ruling on a motion to dismiss, a court can consider matters of which it may take judicial notice. *Randall D. Wolcott, M.D., P.A.*, 635 F.3d at 763. Courts "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a).

Here, the Contract is accessible via Defendant's website. *See* https://www.southwest.com/about-southwest/?clk=GFOOTER-CONTRACT-OF-CARRIAGE#_tab_5 (last visited Jan. 9, 2023). Courts have taken judicial notice of publicly available information on a company's official website. *See Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 491 n.12 (5th Cir. 2013) (holding that the district court was entitled to take judicial notice of posts appearing on www.slabbed.org); *Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 901 n.7 (N.D. Tex. 2020) (taking judicial notice of information posted on the defendant's website); *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 325 F. Supp. 3d 728, 746 n.3 (N.D. Tex. 2018) (taking judicial notice of advertisements on the defendants website over its objection "because the website is a source whose accuracy cannot be (and has not been) reasonably questioned by Defendants."), *aff'd sub nom. Mun. Employees' Ret. System of Michigan v. Pier 1 Imports, Inc.*, 935 F.3d 424 (5th Cir. 2019); *see also* 2 McCormick on Evid. § 330, Facts Capable of Certain Verification (7th ed. 2016) ("Information obtained from online sources is becoming a frequently

used basis for judicial notice.  To this point, government and corporate websites and well-recognized mapping services are among the most commonly relied upon sources.").  In reliance on this authority, the undersigned will take judicial notice of the Contract.

    2.  *Choice of Law Clauses*

Choice of law clauses are presumptively valid.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (enforcing a Florida forum selection and choice-of-law clause contained in a form cruise ship ticket).  Texas courts enforce such clauses unless (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice"; or (2) "the chosen law would be 'contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in determination of the particular issue" and which state's law would apply absent the choice of law clause.  *W.-S. Life Assurance Co. v. Kaleh*, 879 F.3d 653, 658 (5th Cir. 2018) (quoting *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324-25 (Tex. 2014)).  To make the latter showing, three things must be true for Nebraska law to override the Contract's Texas choice-of-law provision.  First, Nebraska must have a "more significant relationship" with the parties and events than Texas does.  *Cannon Oil & Gas Well Servs., Inc. v. KLX Energy Servs., L.L.C.*, 20 F.4th 184, 189 (5th Cir. 2021) (relying on Restatement (Second) of Conflict of Laws §§ 187(2)(b), 188).  Second, Nebraska must have a "'materially greater interest' than Texas in applying its law to this set of facts."  *Id.*  Third, Nebraska must have a fundamental policy that would be contravened by applying Texas law.  *Id.*  The party seeking to avoid a choice of law provision bears this burden of proof.  *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 252 (5th Cir. 1994).

### 3. *Texas Law vs. Nebraska Law*

While Texas has no substantial relationship to the underlying events in this case, there is a reasonable basis for finding that both parties agreed Texas law would apply given that Defendant's principal place of business is in the state. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015). Turning to the second prong of the analysis, there can be no serious dispute that Nebraska has a "more significant relationship" with the parties and events than Texas does. *Cannon Oil & Gas Well Servs., Inc.*, 20 F.4th at 189. Nevertheless, Defendant has not met its burden because it does not point to any "materially greater interest" that Nebraska might have in this case or to any policy problems that might result if the Court applies Texas law. *Id.*; *Cherokee Pump & Equip. Inc.*, 38 F.3d at 252. The Court thus concludes that Texas law applies to adjudicate Plaintiff's claims as contemplated by the Contract's expansive choice of law clause. *See* Doc. 38 at 7; *Maynard v. PayPal, Inc.*, No. 3:18-CV-0259-D, 2019 WL 3552432, at *5 (N.D. Tex. Aug. 5, 2019) (Fitzwater, J.) ("Texas law draws a distinction between broad choice of law clauses that may cover all claims arising from the parties' relationship and narrow choice of law clauses that do not address the entirety of the parties' relationship."); *see also Leblanc v. Delta Airlines*, CV 19-13598, 2021 WL 1517907, at *3 (E.D. La. Apr. 16, 2021) (holding that nearly identical choice of law provision encompassed the plaintiff's personal injury claim).

### C. *Negligence, Defamation, and IIED Claims*

Plaintiff alleges that Defendant was negligent and acted with malice because it "was subjectively aware of the probable falsity of the statements" Skiba made in his FBI interview and at trial. Doc. 28 at 12-13. Plaintiff's claims for defamation and IIED rely on Skiba's statements and acts as well as statements Defendant made to law enforcement. Doc. 28 at 15-16, 20.

Plaintiff further asserts Defendant was negligent in (1) failing to ensure that three flight crew members followed protocol by conferring on the diversion before contacting the pilot; and (2) failing to ensure its crew "followed situational and sensitivity awareness techniques" detailed in its flight attendant manual.[2] Doc. 28 at 13-14.

Defendant asserts Plaintiff's tort claims are barred by the applicable statutes of limitation, which it states began to run on the day of the flight, March 19, 2017. Doc. 37 at 24-28. Alternatively, Defendant contends tort liability cannot be based on statements made during the criminal proceedings. Doc. 31 at 21. Plaintiff counters that his claims are timely as they did not accrue until the conclusion of his criminal case in December 2019, because it was only then that (1) Defendant provided him with the crew report of the flight's first officer and recordings of the crew's conversations about the incident, and (2) a passenger audio recording which refuted Defendant's version of events was admitted into evidence. Doc. 39 at 19-20. Plaintiff additionally invokes the Court's COVID-19 emergency protocols as a factor the Court should consider. Doc. 39 at 19.

The statute of limitations for Plaintiff's defamation claim is one year. TEX. CIV. PRAC. & REM. CODE § 16.002(a) ("A person must bring suit for . . . [defamation] . . . not later than one year after the day the cause of action accrues."). A two-year statute of limitations governs the remaining personal injury claims and begins to run when a plaintiff knows or should have known of the injury that forms the basis for the claim. TEX. CIV. PRAC. & REM. CODE § 16.003(a). A

---

[2] Plaintiff also appears to allege that Defendant negligently omitted certain materials in response to a document subpoena issued in the criminal case. Doc. 28 at 14. Plaintiff, however, has pointed to no legal authority—and the Court has found none—to support his contention that a defendant's alleged failure to turn over relevant materials during a criminal proceeding is an actionable tort.

cause of action generally accrues "when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003).

Here, Plaintiff was aware of the allegedly wrongful acts on March 19, 2017, regardless of whether his damages were "complete" at that time. *Id.* Plaintiff's tort claims thus expired well before he filed the instant action almost four years later. TEX. CIV. PRAC. & REM. CODE §§ 16.002(a), 16.003(a). Texas does recognize the "discovery rule," but it only tolls the limitations period "until the plaintiff discovers, *or through the exercise of reasonable diligence should have discovered*, the nature of her injury." *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1140 (5th Cir. 1997) (emphasis in original) (citations omitted). Plaintiff does not contend, however, that he sought to obtain the flight crew reports or recordings prior to his trial or that such evidence was simply undiscoverable. *See Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001) (holding that the discovery rule is "a very limited exception" that applies "only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable."). The discovery rule thus does not resuscitate Plaintiff's claims. To the extent Plaintiff invokes equitable tolling based on the pandemic, his argument is unavailing. *See, e.g.*, *Bradden v. Lumpkin*, No. 4:21-CV-126-O, 2021 WL 4866992, at *3 (N.D. Tex. Sept. 17, 2021) (O'Connor, J.) (holding that a prisoner was not entitled to equitable tolling based on COVID-related lockdowns).

Even if the Court were to consider the Plaintiff's allegations on the merits, he cannot state a viable personal injury claim against Defendant based on statements made during the criminal proceedings because the statements are shielded by absolute privilege. *See Cuba v. Pylant*, 814 F.3d 701, 715-16 (5th Cir. 2016) (holding that once a criminal investigation commences,

absolute privilege shields even "malicious and false" witness statements); *see also Shell Oil Co. v. Writt*, 464 S.W.3d 650, 653, 656-57 (Tex. 2015) (holding that absolute privilege barred the plaintiff's defamation claims against his former employer, which had provided information to the Department of Justice during a criminal investigation); *Barnes v. Madison*, 79 F. App'x 691, 696 (5th Cir. 2003) (holding that claims subject to the privilege include, among others, negligence, gross negligence, battery, IIED, and defamation).

### D. Constitutional Violations

Next, Plaintiff alleges Defendant violated (1) 42 U.S.C. § 1983 by preventing him (through Skiba's acts) from exercising his free speech rights, and (2) 42 U.S.C. §§ 1985 and 1986 by conspiring to obstruct justice and violate his constitutional rights. Doc. 28 at 22-23. Defendant maintains Plaintiff's section 1983 claims are not actionable because he has not adequately alleged that Defendant was acting under color of state law. Doc. 31 at 23-24. Plaintiff's conspiracy claims are also not viable, according to Defendant, because he alleges that Skiba's actions alone caused the flight diversion and resulting fallout. Doc. 31 at 24-25.

Plaintiff maintains Defendant should be considered a state actor for purposes of section 1983 because it does business with the Omaha Airport Authority and was involved in the airport police investigation following the diversion. Doc. 32 at 24-25. Additionally, Plaintiff posits that Defendant conspired with federal prosecutors to violate his right to call Skiba an "asshole" and to request Skiba's name so he could register a complaint against him. Doc. 32 at 12, 24.

"[T]he Free Speech Clause prohibits only *governmental* abridgment of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1921, 1928 (2019) (emphasis in original). Nevertheless, a private entity can qualify as a state actor in limited circumstances such as when (1) "the private entity performs a traditional, exclusive public function"; (2) "the government

compels the private entity to take a particular action"; or (3) "the government acts jointly with

the private entity." *Id.* at 1928-29 (citations omitted).  Even where a municipality designates a

private corporation to operate a public instrumentality and extensively regulates it, the

corporation is not a state actor subject to First Amendment constraints.  *See id.* at 1931-32.

Neither Defendant's contractual arrangement with the Omaha Airport Authority nor its

involvement in the post-diversion events render it a state actor for section 1983 purposes.

> Section 1985(2), in relevant part, proscribes conspiracies,

> to deter, by force, intimidation, or threat, any party or witness in any court of the
> United States from attending such court, or from testifying to any matter pending
> therein . . . or to influence the verdict, presentment, or indictment of any grand or
> petit juror in any such court.

*Nealy v. Hamilton*, 837 F.2d 210, 212 (5th Cir. 1988) (emphasis omitted).  Plaintiff does not

allege, however, that he was prevented from participating in his criminal proceedings.

Moreover, even if Defendant did conspire with federal prosecutors to improperly influence the

jury by proffering falsities, any such act is "too remote to fit within the intended ambit of §

1985(2)." *Id.*

To state a cognizable claim under section 1985(3), a plaintiff must allege a conspiracy

that (1) was rooted in "racial or class-based discriminatory animus" and (2) "aimed to violate

rights protected against private infringement." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d

261, 270 (5th Cir. 2001) (citations omitted).  While Plaintiff points to negative stereotypes and

treatment of Italian Americans generally, Doc. 28 at 17, he does not connect the generalities to

the facts of his own case.  For example, he does not allege that any member of the flight crew

even knew his nationality, let alone said anything about it.  Defendant is also correct that, given

Plaintiff's repeated representation that Skiba was the sole cause of the diversion and his resulting

prosecution, he has not sufficiently alleged a conspiracy.  *See, e.g.*, Doc. 28 at 6 ("Flight 4011

diverted into Eppley Airfield in Omaha, Nebraska based solely on [Skiba's] claims of the Plaintiff's alleged conduct, and [Skiba] directly contacting the flight deck to state a diversion was needed.  [Skiba] did not confer with the "A" Flight Attendant, the "C" Flight Attendant or First Officer prior to contacting the Captain to demand the diversion."); Doc. 28 at 10 ("Flight Attendant Skiba stated he contacted the Pilot in Command and directly told the Pilot in Command the diversion was necessary, doing so without conferring with the 'A' and 'C' Flight Attendants.").  Thus, Plaintiff's section 1985 claims fail.  Finally, because prevailing under section 1985 is a prerequisite for recovery under section 1986, Plaintiff's section 1986 should be dismissed as well.  *Miss. Women's Med. Clinic v. McMillan*, 866 F.2d 788, 795 (5th Cir. 1989).

## IV.  LEAVE TO AMEND

A court may dismiss a complaint that fails to meet the pleading requirements but "should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).  Plaintiff has previously amended his complaint and does not request leave to amend again in response to Defendant's dismissal motion. Therefore, it appears that he has pled his best case at this point. *See, e.g.*, *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (per curiam) (holding that dismissal of a *pro se* case with prejudice is appropriate if the court determines that the plaintiff has alleged his best case).  Allowing Plaintiff leave to amend his complaint would be futile, cause needless delay, and waste the Court's resources.

## V.  CONCLUSION

For the foregoing reasons, *Defendant Southwest Airlines Co.'s Motion to Dismiss Plaintiff's Amended Complaint*, Doc. 30, should be **GRANTED**, and Plaintiff's complaint should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on January 10, 2023.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

16